

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. AP-76,302

### EX PARTE WILLIAM LEE NISWANGER, Applicant

### ON APPLICATION FOR A WRIT OF HABEAS CORPUS FROM FREESTONE COUNTY

**JOHNSON, J.,** filed a dissenting opinion.

## D I S S E N T I N G   O P I N I O N

Applicant was selling raffle tickets in the parking lot of a grocery store, with the manager's permission. There is nothing in the record that supports a conclusion that applicant was holding himself out as a fireman, regular or volunteer, in an effort to entice shoppers to purchase a ticket. The only evidence is the offense report of an officer who was investigating a complaint by the mayor that applicant did not have the proper approval from the city to sell raffle tickets. That report reveals that applicant is six feet tall and weighs 400 pounds. He, according to her report, made no claim of being a fireman until she asked him for identification.

Officer Solly's report indicates that she went to the grocery store to investigate after the mayor reported the violation of a Teague city ordinance.

> On the date and time listed above, and at the Teague City Hall in Teague, TX, Freestone County, I did receive a complaint from Mayor Jacqueline Utsey in reference to a subject at Brookshire Brothers in Teague, TX soliciting citizens for the fire fighters fund. She also stated that he did not have a permit to do so (per: Teague Code of Ordinances 4.502 application; information to be contained; permit). Witness Utsey also stated that on 08/29/2008 at approximately 10:30 am, she went to Brookshire Brothers and there was a white male sit[t]ing at a table soliciting on behalf of the volunteer fire department. He also asked if she was a hunter. She told him no and went into the store. When she returned, she asked him if he would be here a while. He stated that he would be there about 45 more minutes. He also stated that part of the money would go to soldiers in Iraq, and part would go to the fire department. She thanked him for the information, and left. That is when she came and found me.

> S[g]t. J. Monks and myself then went up to Brookshire Brothers, and did observe a white male sitting at a table with a bunch of flyers taped to it. The flyers stated that he was collecting money for fire fighters, Marines in Iraq, and the Roping the Wind Foundation. When I walked up to the subject, I asked him what he was raising money for. He stated to me that he was raising money for fallen fire fighters and our soldiers. He then asked me if I would like to buy a raffle ticket. I then asked him if he was a fire fighter, and he said yes. He then showed me a Grandview Fire Department identification card in an attempt to have me donate to him. I made the subject aware of the violation of city ordinance 4.502 (permits required from solicitors). I then identified him as William Lee Niswanger (W/M, DOB: 07/22/1965, TXDL# 14684108). I asked the suspect what he was doing. He then stated that he was raising money for the fire fighters. I asked him if he was a fire fighter. He stated that he was a approximately [sic] with Grandview Fire Department. I then asked to see his credentials. He showed me a Grandview approximately [sic] badge that was in a brown wallet, and a Grandview approximately [sic] identification card that was in his back pocket as well. I then asked the suspect what he had in the brown cardboard box that was on the table, he said that it was just some stuff that he needed. I asked him if I could look in the brown box. He gave me consent. I did recover a 6" knife that was not in its sheath. I asked him what it was doing there, and he stated that he did not know that it was there. I also recovered a roll of unused blue raffle tickets. I then asked the suspect how much money that he had raised; he stated that he had raised about seventy dollars or so. I asked him if I could look in his solicitation jar that was on the table as well. He gave me consent. I did recover about 20 to 30 assigned raffle tickets inside the jar. I asked him where the rest of the money was. He had told me earlier

the rest of the money was in his back pocket. He then retrieved about sixty dollars. I then asked him if that was his white Ford van parked close by. He stated that it was and then gave me consent to search his van. I did recover more items from the van (see itemized property list.) I then asked the suspect to follow me up to the police station to have a further talk. He did agree to do so.

When we arrived at the police station, I had witness Utsey make a positive ID on the subject that solicited her at Brookshire Brothers. She did positively identify him. She then gave a witness statement as to the fact. I also had her write me a statement as to the previous incident that day. She did so. The subject was then Mirandized. I then advised him that he was under arrest. He then made a statement that he was collecting money for a foundation that he created. He also advised me that he was a approximately [sic]. I then had Sgt. J. Monks contact Grandview Fire Department, to ascertain his employment. S[g]t. Monks spoke with the treasurer of the Fire Department who he identified as Bryan Anderson. Mr. Anderson stated that he was not shown as a volunteer of any kind. (Grandview V.F.D. Contact info. 1-817-866-2333). [Van towed, applicant booked into Freestone County jail, questioned further, gave consent to search of his residence.]

According to Officer Solly's report, the mayor did not assert that applicant claimed to be a fireman or that he used that claimed status to induce her to buy a raffle ticket; she complained only because she believed that he was violating a city ordinance. Officer Solly's report is repetitive in a way that distorts the chronological order of events and the motivation for showing fire fighter identification. First she says that, after he asked her if she wanted to buy a raffle ticket, she asked him if he were a fireman. He said, "Yes," and showed identification "in an attempt to have me donate to him." Three sentences later in her report, she stated that she asked applicant if he were a fire fighter and then asked him for his identification, which he showed to her. These two chronologies cannot both be true. Regardless of which sequence is taken as true, however, applicant made no claim of being a fireman until Officer Solly asked him if he was one.

There is no assertion that applicant was wearing any part of a fireman's uniform or any insignia of a fireman. Common sense tells a reasonable person that someone who is six feet tall and

weighs 400 pounds is not a fireman. There is no evidence that he asserted to any person other than a uniformed police officer, upon her request and *after* his inquiry as to whether she wanted to buy a raffle ticket, that he was a fireman, only evidence that he claimed that he was collecting money and selling raffle tickets for the benefit of fire fighters.

The statute states that

(a) A person commits an offense if he:
   (1) impersonates a public servant with intent to induce another to submit to his pretended official authority or to rely on his pretended officials acts; or
   (2) knowingly purports to exercise any function of a public servant or of a public office, including that of a judge and court, and the position or office through which he purports to exercise a function of a public servant or public office has no lawful existence under the constitution or laws of this state or of the United States.

Texas Penal Code, section 37.11.

The indictment filed by the district attorney stated that

Applicant did then and there impersonate a public servant, namely a fireman, with intent to induce Shawn Solly to submit to the pretended official authority of the defendant or to rely on the pretended official acts of the defendant by showing a badge and identification to induce the purchase of raffle tickets for fire fighter fund.

Assuming without deciding that a volunteer fire-fighter is a public servant, there is no evidence that selling raffle tickets is an "official act." Fire fighters, in uniform and on their own time, sometimes solicit funds for charity at stop lights, but their mere status as public servants does not elevate such solicitation to an "official act." Fire fighters may, as a part of their "official authority" or as a "function of a public servant," command citizens to stay away from a fire or to refrain from "helping" them fight a fire. They do not, as a part of their "official authority," have the power to make citizens throw money into a boot or buy raffle tickets, nor are those things a "function of a public servant." There can be no inducement to "submit to his pretended official authority"

when the charged act is not within any official authority of a public servant.

Applicant was guilty of unlawfully carrying a weapon, the 6" knife, and he may have been guilty of fraud or theft. He was in no way guilty of impersonating a public servant.

I conclude that applicant has proven by a preponderance of the evidence that his counsel's performance was deficient. He has also shown that there is a reasonable probability that, but for counsel's deficient representation, he would not have plead guilty and would have insisted on going to trial. Therefore, I would find that applicant's plea was not knowing and voluntary. He is entitled to relief. Because the Court does not grant him that relief, I dissent.

Filed: March 16, 2011
Publish